# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KURTIS D. JONES,

           Plaintiff,

v.

LUKAS MARWITZ, MARY BAGGIO, ROBERT RYMARKIEWICZ, and TORRIA VANBUREN,

           Defendants.

Case No. 24-CV-55-JPS

**ORDER**

      Plaintiff Kurtis D. Jones, an inmate confined at Waupun Correctional Institution ("WCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.[1]

## 1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

      The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing

---

[1] The Court notes that it screens Plaintiff's complete complaint, ECF No. 1-2. Plaintiff initially filed an incomplete complaint. *See* ECF No. 1. Plaintiff later filed a complete complaint, *see* ECF No. 6, which the Clerk of Court then filed as the complete complaint, ECF No. 1-2.

fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On February 16, 2024, the Court ordered Plaintiff to pay an initial partial filing fee of $3.16. ECF No. 8. Plaintiff paid that fee on March 4, 2024. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 4. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.  SCREENING THE COMPLAINT

    2.1  Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2  Plaintiff's Allegations

Plaintiff names Defendants Lukas Marwitz ("Marwitz"), Mary Baggio ("Baggio"), Robert Rymarkiewicz ("Rymarkiewicz"), and Torria VanBuren ("VanBuren"). ECF No. 1 at 1. On March 16, 2022, Plaintiff was on observation status in cell B-228 when he found a piece of a toothpaste cap and used it to cut his right antecubital artery. *Id.* 2. All cells are to be thoroughly searched and inspected before inmates are placed into observation status. *Id.* This cell had clearly not been searched and the failure to do so caused Plaintiff significant harm. *Id.* C.O. Tracy Hall was the observation officer doing rounds. *Id.* She looked into Plaintiff's cell and observed the blood splattered on the walls and floor and left to notify officers in the sergeant's office about his self-harm. *Id.*

C.O. Hall came back with C.O. Wiltgen, C.O. Hill, C.O. Lyons, and C.O. Grippentrogg. *Id.* C.O. Hall was telling Plaintiff to come to the door and cuff-up. *Id.* Marwitz arrived and immediately opened Plaintiff's trap door and threatened to spray Plaintiff right away. *Id.* Plaintiff hesitated and

backed up a step toward the shower and Marwitz sprayed him. Plaintiff covered his face and turned his back and Marwitz sprayed him again. *Id.* As Plaintiff walked over to the sink to wash his eyes, Marwitz sprayed Plaintiff again with a bigger and more concentrated can of O.C. spray called MK-9.

Plaintiff complied with cuffing up and shackles were placed on his ankles when the door opened. *Id.* Plaintiff was escorted to the showers, fully cuffed and shackled, with an officer holding each arm. *Id.* Plaintiff was allowed water to rinse for approximately five seconds before Marwitz said that was enough. *Id.* The officers pulled him out of the shower and Plaintiff was not allowed a proper decontamination from the OC spray. *Id.*

Plaintiff told Marwitz that he never gave Plaintiff an opportunity because he brandished his weapon against Plaintiff before he realized what was going on. *Id.* at 3. Marwitz offered HSU but Plaintiff responded that he wanted a shower. Marwitz responded that Plaintiff was bleeding all over and that he would see about a shower after a nurse treated his wound. *Id.* Plaintiff responded that was okay and he was escorted to the strip cell for Nurse Brian Taplin to look at his wound. *Id.* Nurse Brian said the wound looked pretty clean and noted it was not bleeding anymore. *Id.* Nurse Brian asked if Plaintiff wanted a bandage, and Plaintiff responded that a bandage would only get in the way once he was strapped down. *Id.* Nurse Brian told Plaintiff to let him know if he changed his mind about the bandage. *Id.*

Marwitz then came to notify Plaintiff that he was going to be strapped down in bed restraints. *Id.* Plaintiff said that was fine but asked again for his decontamination shower. *Id.* Marwitz replied that Plaintiff was already given the opportunity to shower. *Id.* Plaintiff told Marwitz that his eyes and body were still covered in OC. *Id.* Marwitz knows that the strap-

down would last for twelve hours but failed to give Plaintiff a decontamination shower. *Id.* Lt. Hintz took Marwitz's place and insisted he could not undermine Marwitz's decision. *Id.* Hintz did not provide Plaintiff with a shower but asked if he could at least get a wet rag to wipe Plaintiff's eyes. *Id.*

Dr. Baggio walked up to Plaintiff's cell to announce her presence. *Id.* at 4. Baggio asked if Plaintiff wanted to talk to her. *Id.* Plaintiff told Baggio that Marwitz was refusing him a shower despite knowing he would be strapped down for at least twelve hours. *Id.* Baggio said that she would feel more comfortable with him strapped down since it was the second time that day he had tried to harm himself. *Id.* Baggio said she could do nothing about the shower and instead asked Plaintiff why he had written her name on the wall in blood. *Id.* Plaintiff responded that his only focus was that Marwitz was attempting to torture him and that everyone else was allowing it to happen. *Id.* Baggio left without allowing Plaintiff a decontamination shower. *Id.* Hintz returned with a wet rag to wipe Plaintiff's eyes and asked if he would comply with the strap-down procedure. *Id.* Plaintiff replied that he had no choice. *Id.*

Plaintiff describes WCI's strap-down policy. *Id.* at 5. Two hours passed and security staff came in to ask if he wanted water or needed to urinate. *Id.* Another two hours passed and Plaintiff informed security staff that he did not want range of motion ("ROM") performed as part of the normal strap-down procedure because his body burned from the OC and moving caused additional pain. *Id.* Plaintiff also asked for his eyes to be wiped because his sweat made the OC from his scalp drip into his eyes. *Id.* The first twelve hours passed and then Baggio returned with security staff. *Id.* Baggio asked if Plaintiff wanted to talk but he responded that he wanted

to get up to shower. *Id.* Baggio asked why Plaintiff cut himself and wrote her name on the wall, but Plaintiff responded he did not want to talk about that. *Id.* Plaintiff said that he was safe and ready to get up. *Id.* Baggio responded that Plaintiff had to comply with PSU questioning and ROM before he was allowed to get up. *Id.* Plaintiff again stated his reasons for not wanting ROM and said that he did not feel comfortable discussing his personal issues with security staff in the room. *Id.* at 5–6. Baggio said she did not feel comfortable letting him get up and left the room. *Id.* at 6.

Another twelve hours passed, and Baggio returned with security staff. *Id.* Baggio asked if Plaintiff was ready to talk yet. *Id.* Plaintiff responded that she was never going to break him and that her torture method would only result in a civil action. *Id.* Baggio responded that he only had to comply to be let up. *Id.* Plaintiff said he would never work with her after knowing that she allowed this torture. *Id.* Baggio said she would see him in another twelve hours and walked away. *Id.*

Twelve more hours passed, and a different PSU clinician saw Plaintiff. She asked why Plaintiff had been refusing PHS and HSU. *Id.* Plaintiff explained his situation. *Id.* The clinician asked if Plaintiff could commit to safety and he again said, yes. *Id.* The clinician said he would need a few more hours since this was the first positive sign. *Id.* Four more hours passed and then Plaintiff was finally freed from the strap-down. *Id.*

Plaintiff wrote a complaint on Marwitz and Baggio about his physical conditions and retaliation; Plaintiff was told he had to go through the chain of command by writing Rymarkiewicz and VanBuren. *Id.* at 7. Rymarkiewicz turned a blind eye to Plaintiff's suffering. *Id.* He said that OC was unpleasant, and that Plaintiff should have followed orders. *Id.* Marwitz was never disciplined, and this practice continues. *Id.*

VanBuren was notified of Baggio's retaliation. *Id.* VanBuren was aware that there was a conflict of interest because Baggio had an inappropriate relationship with Plaintiff. *Id.* VanBuren was aware that a detective had come to investigate sexual misconduct between Baggio and Plaintiff, but VanBuren still forced Plaintiff to work with Baggio. VanBuren was aware that Plaintiff is a code MH2B (serious mental health illness) and that he was not given any kind of programming. *Id.*

### 2.3 Analysis

First, the Court will allow Plaintiff to proceed against Marwitz for an excessive force claim. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When a correctional officer is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Several factors are relevant to this determination, including the need for force, the amount of force applied, the threat the officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that Marwitz excessively used OC spray on him, prior to giving Plaintiff any chance to comply with orders. At the pleading stage, these allegations are sufficient to proceed against Marwitz for an Eighth Amendment excessive force claim.

Second, the Court will allow Plaintiff to proceed against Marwitz and Baggio for an Eighth Amendment conditions of confinement claim. A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013).

Plaintiff alleges that Marwitz refused to give him a proper decontamination shower following the use of OC spray, despite knowing that Plaintiff would be strapped down for at least twelve hours. Plaintiff also alleges that Baggio refused him a proper decontamination shower and forced him to be strapped down for an unnecessary amount of time based on her anger towards him rather than for a valid penological reason. At the pleadings stage, the Court finds the allegations sufficient to proceed on an

Eighth Amendment conditions of confinement claim against Marwitz and Baggio.

Third, the Court finds that Plaintiff may proceed on a First Amendment retaliation claim against Baggio. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, the Court liberally construes Plaintiff's allegations to suggest that he believes Baggio retaliated against him for complaining about her sexual misconduct. It is well established that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the second element, Plaintiff alleges suffering deprivations—being denied a decontamination shower and unnecessarily being strapped down for over twenty-four hours—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (prison transfer likely to deter). At the pleadings stage, the Court therefore finds these allegations sufficient to state a First Amendment retaliation claim against Baggio.

Finally, with regard to the other named defendants, Rymarkiewicz and VanBuren, the Court will dismiss them for Plaintiff's failure to state a claim against them. Section 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle,* 599 F.3d 583, 588 (7th Cir. 2010). Only a defendant who is personally responsible for depriving the plaintiff of a constitutional right may be held liable under

§ 1983. *Grieveson v. Anderson,* 538 F.3d 763, 778 (7th Cir. 2008). As to Rymarkiewicz, Plaintiff alleges only that he is liable based on his supervisory capacity and failure to discipline Marwitz and Baggio. As to VanBuren, the factual allegations surrounding this defendant are not clear. A § 1983 plaintiff must "ground his legal conclusions in a sufficiently plausible factual basis" that places each defendant "on notice of what exactly [he or she] might have done to violate his rights under the Constitution." *Brooks v. Ross*, 574 F.3d 574, 582 (7th Cir. 2009). Plaintiff provides that VanBuren was notified about misconduct between Baggio and Plaintiff, however it is not clear whether this occurred before or after Baggio's alleged unconstitutional conduct. As such, the Court will dismiss Rymarkiewicz and Baggio from the case. Plaintiff may amend his complaint and provide more details regarding Rymarkiewicz's or VanBuren's conduct if he believes they were personally responsible for a constitutional violation.

3.   **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment excessive force claim against Defendant Marwitz.

**Claim Two:** Eighth Amendment conditions of confinement claim against Defendants Marwitz and Baggio for denying him a proper decontamination shower and additionally against for Baggio forcing him to be strapped down for an unnecessary amount of time.

**Claim Three:** First Amendment retaliation claim against Defendant Baggio.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 4, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that under Defendants Rymarkiewicz and VanBuren be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Marwitz and Baggio**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed.

Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $346.84 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 1st day of April, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202
>
> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.